Lawrence REIFSTECK, by and through his next friend, Marie Reifsteck, Appellant,

v.

Guy MILLER, Kenneth Earl and Vivian Gregory (Limbach), Respondents.

No. 49612.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Gregg Wm. Keegan, St. Louis, John E. Bardgett, Clayton, for appellant.

Morris Chapman, Granite City, Ill., Fred J. L. Schuler, Clayton, Herbert E. Barnard, James E. McDaniel, McDonald, Barnard, Wright & Timm, St. Louis, for respondent Guy Miller.

Murphy & Kortenhof, Joseph M. Kortenhof, St. Louis, for respondent Vivian Gregory (Limbach).

STOCKARD, Commissioner.

Lawrence Reifsteck, plaintiff in the trial court and appellant here, brought this suit in two counts for damages for personal injuries sustained in an automobile collision occurring in Illinois on December 3, 1960. By Count I he sought $75,000 damages for the alleged negligence of three persons, Kenneth Earl, in whose automobile he was a passenger, and Guy Miller and Mrs. Vivian Gregory, the operators of two other automobiles. By Count II he sought an additional sum of $30,000 from Miller and Mrs. Gregory as punitive damages on the theory that their conduct was willful and wanton. The trial court directed a verdict at the close of plaintiff's evidence in favor of Earl and Mrs. Gregory on Count I, and in favor of Miller and Mrs. Gregory on Count II. After trial, and pursuant to jury verdict, judgment was entered in favor of Miller on Count I. Plaintiff has appealed. As to that part of the judgment in favor of Miller on Count I he assigns error in the giving of instructions and in the admission of evidence. He assigns no error as to that part of the judgment whereby a verdict was directed in favor of Earl and Mrs. Gregory on Count I. As to Count II he assigns error in directing a verdict in favor of Miller and Mrs. Gregory.

Respondent Miller has filed a motion to dismiss the appeal pursuant to Civil Rule 83.09, V.A.M.R., because of the failure of appellant's brief to comply with Civil Rule 83.05, V.A.M.R., in that the brief does not contain a fair and concise statement of the facts. We have decided to rule those mat-

ters which have been properly presented for appellate review on the merits, and so the motion to dismiss is overruled without further comment.

The collision occurred a few miles south of East St. Louis on Highway 3, a four-lane highway. The Earl automobile was traveling north. According to witness Gaynor it was in the inside or passing lane, but witness Stillman said it was in the outside or curb lane. Behind it about three car lengths, but in the outside or curb lane, was the Gaynor automobile. Both were traveling about 40 miles an hour. The Gregory and the Miller automobiles were traveling south on the highway between 40 and 45 miles an hour in the inside or passing lane with the Gregory automobile in front. The Johnson automobile was traveling south ahead of the Gregory and Miller automobiles. According to Mrs. Gregory, the Johnson automobile was in the passing or inside lane, but Michael Stuart, age eleven at the time of trial and who was a passenger in the back seat of the Johnson automobile, testified that it was preparing to turn right into a gasoline service station on the west side of the highway. Witness Stillman said it was in the outside or curb lane. According to Mrs. Gregory, when the Johnson automobile was 60 or 70 feet ahead of her it started to swerve to the left without a signal. After glancing in her rear view mirror she swerved to the right around the Johnson automobile. After she had passed she looked in her rear view mirror to see what it was going to do, and she saw the Miller automobile strike it. According to Miller, as he was traveling south in the passing lane, the automobile in front of him (Gregory automobile) made a swerve to the right, he then removed his foot from the accelerator preparatory to putting on his brakes, and a black "object" suddenly appeared before him. He could not then tell if it was an automobile. He tried to apply his brakes and swing to the right at the same time, but he collided with the object. The hood of his automobile flew up and after careening to the right and then

left he stopped on the east side of the northbound lane after colliding with an automobile which was being operated by Golda Moran who had stopped because of the collision ahead of her. Either immediately before or after the Miller and Johnson automobiles collided, and this is the principal factual dispute in the case, the Johnson automobile crossed into the northbound lane of the highway and collided, as one witness said, left headlight to left headlight, with the Earl automobile in which appellant was riding. It was from this collision that appellant sustained his injuries upon which this suit is based. After that collision the Earl automobile spun around and it and the Gaynor automobile collided. The essential factual question as to which appellant and respondent Miller differ is what caused the Johnson automobile to cross over into the northbound lane and into collision with the Earl automobile. This becomes important on this appeal because of the instructions, and we shall now review the provisions of those which are pertinent to the issue.

By Instruction No. 4, appellant's verdict directing instruction, the jury was told that if it found that Miller was operating his automobile southwardly on Highway 3 behind and to the rear of the Johnson automobile in the southbound portion of the highway; that plaintiff was a passenger in an automobile being operated northwardly in the northbound lane of the highway; that a collision occurred between the front of Miller's automobile and the rear of the Johnson automobile; that "as a direct result of such collision, if you find that same took place, that the Johnson car was caused to cross into the northbound portion of Highway 3 and into the automobile in which plaintiff was riding as a passenger and if you further find that as a direct result thereof plaintiff was caused to be injured" while exercising ordinary care for his own safety; and that Miller by the exercise of ordinary care in keeping a lookout ahead for vehicles could have discovered the automobile of Johnson in time to have avoided the

collision but failed to do so and thereby was negligent and that such negligence directly caused or directly contributed to cause plaintiff to be injured, then the verdict should be in favor of plaintiff. It is thus evident that appellant's theory was that Miller negligently struck the Johnson automobile while it was in the southbound lane of Highway 3 and caused it to cross into the northbound lane and into a subsequent collision with the Earl automobile.

Miller's Instruction No. 5 was as follows: "The court instructs the jury that if you find from the credible evidence that on the occasion in question the Johnson automobile referred to in evidence was being operated southwardly on Highway 3 in the State of Illinois at or near the Phillips 66 Service Station mentioned in evidence, and if you further find that the Defendant Miller was operating his automobile southwardly on Highway 3 and in a direction toward the Johnson car and if you further find that plaintiff was a passenger in an automobile being operated northwardly in a northbound lane of said Highway 3 at or near the Phillips 66 Service Station mentioned in evidence, and if you further find that at said time and place mentioned in evidence the Johnson automobile collided with the automobile in which plaintiff was a passenger and that thereafter a collision occurred between the said Johnson automobile and defendant Miller's automobile, then you can not find for the plaintiff and your verdict must be for the defendant."

Appellant assigns error in giving Instruction No. 5 for the following reasons: (a) there was a total absence of evidence "that Johnson had ever collided with Earl before such was caused by Miller admittedly striking him;" (b) the instruction did not seek to controvert the failure on the part of Miller to keep a lookout as submitted in plaintiff's verdict-directing instruction, but sought to exonerate Miller on the ground that Johnson's negligence was the sole and proximate cause of plaintiff's injuries, and the instruction does not sufficiently hypothesize facts which would absolve Miller from

fault; and (c) the instruction "did not set any standard for the jury but left the entire matter for the jury to speculate about under most confusing instructions."

■ Appellant asserts that Instruction No. 5 purports to be a sole cause instruction. Without going into detail it may be said that it does not meet the requirements of such an instruction. See Happy v. Blanton, Mo., 303 S.W.2d 633; Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Ketcham v. Thomas, Mo., 283 S.W.2d 642. Therefore, the contentions of appellant in (b) above are meritorious if, but only if, the instruction purports to submit the defense of sole cause. However, Miller contends that Instruction No. 5 is a converse instruction, and that it is sufficient as such.

■ In Liebow v. Jones Store Company, Mo., 303 S.W.2d 660, it was said: "The defendant can submit either the exact converse of plaintiff's verdict-directing instruction, Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, or the exact converse of any essential element of such instruction. Reger v. Nowotny, Mo.Sup., 226 S.W.2d 596; McCarty v. Milgram Food Stores, Inc., Mo.Sup., 252 S.W.2d 343; Oshins v. St. Louis Public Service Co., Mo.Sup., 254 S.W.2d 630. When either is done the result is what is referred to as a 'true converse instruction,' and such an instruction does not require affirmative testimony in support of it. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 464. However, the defendant may also submit facts in an instruction, the existence of which would disprove, that is controvert, one or more of the essential factual elements of plaintiff's case. See Rose v. St. Louis Public Service Co., Mo. Sup., 205 S.W.2d 559. This form of an instruction also is sometimes referred to as a converse instruction. But when the defendant submits this form, whether or not it is referred to as a converse instruction, it must have factual support in the testimony." A "true converse" instruction in this case, for example, would have been the submission that Miller did not hit the Johnson

automobile, or if he did that the collision did not cause the Johnson automobile to cross into the northbound lane and into collision with the Earl automobile. Instruction No. 5 did not do this. Therefore, it is not what is referred to as a "true converse" instruction. See Schaefer v. Accardi, Mo., 315 S.W.2d 230; McCarty v. Milgram Food Stores, Inc., Mo., 252 S.W.2d 343; and Dell'aria v. Bonfa, Mo., 307 S.W.2d 479. Instead, it submitted a set of facts, which if found to be true, disproved or controverted appellant's theory of recovery. It is obvious that when it is appellant's theory that he was injured as the result of the Miller automobile striking and propelling the Johnson automobile into collision with the Earl automobile, his theory of recovery is destroyed if the Johnson and Earl automobiles collided before the collision between the Johnson and Miller automobiles. The Miller automobile, by colliding with the Johnson automobile, could not have propelled it into another collision which had previously occurred. Therefore, if Instruction No. 5 has support in the testimony it meets the requirements of that form of instruction which is sometimes referred to as a converse instruction but which is not a "true converse."

No one witness saw all of the occurrences, and the events to which every witness testified to could not have occurred because of the conflicts and inconsistencies contained therein. However, this was a matter to be resolved by the jury. No witness testified that he saw the Johnson and Earl automobiles collide in the northbound lane and that thereafter the Miller and Johnson automobiles collided, which is Miller's theory. But, we note that no witness testified that he saw the collision of the Johnson and Earl automobiles occur after the collision between the Johnson and Miller automobiles, which is plaintiff's theory. Circumstantial evidence is necessary to establish either sequence of events. We are only concerned in this discussion with whether the evidence authorizes a finding of the occurrence according to Miller's

theory and as submitted in Instruction No. 5. In making that determination we must keep in mind that all testimony as to distance, speed or time is based on estimates, and in an automobile collision case, especially one of this complexity, parties should not be too strictly bound by such estimates. Fisher v. Gunn, Mo., 270 S.W.2d 869, Harrellson v. Barks, Mo.App., 326 S.W.2d 351, 357.

Richard K. Odem, a witness called by plaintiff and who at time of trial was a police officer, was driving north near the scene at the time of the collision. He testified that his attention was directed to the collision when he heard a "crunch like metal to metal and like cars hitting together." He looked up and saw an automobile spinning around in the middle of the road. It had collided on the east side of the highway center line with a southbound automobile. These two automobiles were identified as being the Johnson and Earl automobiles. To him, contrary to another witness, it appeared that the left front of the Johnson automobile had hit the side and rear of the Earl automobile. When Odem stopped a Ford stopped nearby, which apparently was the automobile of Golda Moran. According to Mr. Odem, "We stopped there a few minutes [at another time he used the term 'a minute or two'] and this blue Chevrolet station wagon [the Miller automobile] came out around this and came across the highway, veered across the highway and headed in a southerly direction and was rolling slow with the hood up and [there] was a minor collision into this car [Golda Moran] next to me." Miller testified that he was about three car lengths behind the Gregory automobile, and Mrs. Gregory testified that she did not see the Johnson and Earl automobiles collide, but that she did see, in her rear view mirror the Miller automobile collide with the Johnson automobile. It is evident that to be consistent with Mrs. Gregory's testimony and with Miller's estimate of distance, Odem's use of the term "minute" had to refer to a small period of time and not

necessarily to a period of time composed of sixty seconds. We know that the term is frequently so used, and that is one of its accepted meanings. Webster's Third International Dictionary, Unabridged.

Golda Moran was traveling north on Highway No. 3 and saw the rotating light on a police car ahead of her. She slowed down and then stopped, and it was at that time that the Miller automobile, with its hood up, came down and across the highway and collided with the front of her automobile. She saw no collision, other than the one with her automobile, and the inference is that some collision had previously occurred a sufficient period of time for the police to arrive (the officer estimated that he was there in "two minutes") before the Miller automobile collided with hers.

Elmer Stillman was driving north on Highway 3. He saw a blue flame or flash come from beneath an automobile in the outside lane traveling south and he heard a muffled explosion. Seconds later he drove through a shower of glass which came from that automobile. At the time of the explosion, this automobile, otherwise identified as the Johnson automobile, swerved across the highway in a southeasterly direction. He speeded up to run out of its path. The Johnson automobile proceeded across the highway, and in his rear view mirror Stillman saw it collide with the automobile behind him which was the Earl automobile. He did not see the Miller automobile strike the Johnson automobile, but he testified that if it had hit the Johnson automobile at the time of the flash and explosion he would have seen it. Mrs. Stillman, who was a passenger in her husband's automobile, testified that she saw the Johnson automobile in the outer southbound lane, that she saw a flash and the Johnson automobile went diagonally across the highway into collision with the Earl automobile, and that at the time of the flash there was no other automobile within fifty feet of the Johnson automobile. She did not see a collision between the Johnson and Miller automobiles. Mrs. Odem, a passenger in the automobile driven by her husband, also testified that she heard a noise and then saw "this flash of light." It was, she said, "a white light, sort of blue tinged like a flash bulb going off." Mrs. Odem further testified that it was after her husband had stopped his automobile that the Miller automobile came across the highway and collided with the Moran automobile.

While it is true that there is no direct testimony that the collision of the Johnson and Earl automobiles occurred before the collision of the Miller and Johnson automobiles, the above testimony authorizes such a finding. We therefore conclude that Instruction No. 5 was supported by the evidence. We do not agree with appellant's conclusion that Instruction No. 5 provided no "standard for the jury" and that it left the determination of the issue to speculation. The instruction is not erroneous for any of the reasons assigned.

Plaintiff's remaining points, in their entirety, are as follows: "II. The court greatly overemphasized the burden of proof as to plaintiff to where such was prejudicial error;" "III. The admission of Feuchter's 'Expert Opinion' that there was an internal explosion was gross error;" and "IV. To strike out the punitive count and to exclude the testimony of Johnson that Miller was going 75 miles per hour was error." Civil Rule 83.05(e), V.A.M.R., requires that a point relied on "shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely why it is contended the Court was wrong in any action or ruling sought to be reviewed." As pointed out in Domijan v. Harp, Mo., 340 S.W.2d 728, 731, this rule is printed in the front of every docket for the convenience of the Bar. The rule has a twofold purpose. It gives the appellate court a short concise summary of what appellant claims the trial court did that was wrong and why he claims it was wrong, Conser v. Atchison, T. & S. F. Ry. Co., Mo., 266 S.W.2d 587, 589, certiorari denied 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653, and equally important, it

informs respondent's counsel just what appellant's contentions really are and what he is required to answer. Domijan v. Harp, supra, 340 S.W.2d at p. 732. The three points quoted above contain no explanation whatever to show *why* appellant contends the trial court was wrong, and in fact the statements are so general that it can hardly be said that they concisely inform either the court or respondent *what* is contended to be wrong. In Schlanger v. Simon, Mo., 339 S.W.2d 825, 829, it was stated that sometimes an appellate court in its discretion will look to the argument in the appellant's brief for aid in determining the precise contentions of error. We have done that in this case, and in addition we have read the transcript carefully, with the twofold purpose of determining the precise contentions if possible and to see if there occurred plain error affecting substantial rights within the meaning of Civil Rule 79.04, V.A.M.R. We shall comment briefly on what we have found.

As to the contention concerning the burden of proof. Plaintiff first asserts that Miller's short and concise burden of proof instruction, which was in the form approved in Gildehaus v. Jones, 356 Mo. 8, 200 S.W.2d 523, wrongfully required plaintiff to prove "by a preponderance or greater weight of the credible evidence" the fact, as expressly submitted in plaintiff's verdict directing instruction, that plaintiff "was at all times shown in evidence exercising ordinary care for his own safety." Plaintiff has failed to recognize that the rights of the parties in this action were governed by the substantive law of the State of Illinois, and that "under the law of Illinois it was incumbent upon plaintiff to allege and prove that he was in the exercise of ordinary care for his own safety at the time of the accident." Redick v. M. B. Thomas Auto Sales, 364 Mo. 1174, 273 S.W.2d 228, 233; Gerhard v. Terminal Railroad Association of St. Louis, Mo., 299 S.W.2d 866. Plaintiff cites and relies on Thompson v. Byers Transportation Company, Mo., 362 Mo. 42, 239 S.W.2d 498, but it has no ap-

plication whatever. It pertained to a case governed by the substantive law of Missouri, and it was held to be error for a burden of proof instruction to impose on the plaintiff the duty to prove he was not contributorily negligent contrary to the substantive law of Missouri. Plaintiff also asserts that the court gave six other burden of proof instructions, but in this he is in error. We have examined each instruction referred to in the argument. They are all cautionary instructions, and plaintiff does not assert that any are erroneous as such.

As to the contention concerning the expert opinion. A little over two months after the collision Miller arranged for Joseph Feuchter to make an examination of the Johnson automobile which was then at what plaintiff calls a junk yard, but which Mr. Feuchter said was Fahey's Auto Parts in East St. Louis. Following that examination the deposition of Mr. Feuchter was taken at which he qualified as an expert in "traffic and transportation" and in "traffic accident investigation." At the time of trial Mr. Feuchter was in a hospital, and over the objection of plaintiff portions of the deposition of Mr. Feuchter were read to the jury. The substance of his testimony was that because of the nature of the damage to the rear of the Johnson automobile, which he described in detail, it was his opinion that "a severe blow was struck on the left rear corner of the vehicle," that "a closed object [the trunk of the automobile], such as indicated * * * which is fully enclosed, can normally only be forced outward from practically all directions from an internal explosive type of force," and that there had been an internal explosion within the trunk which was not from gasoline but he could not determine the source. Plaintiff asserts that Mr. Feuchter was not qualified, but he does not elaborate. The trial court found that he was and we think the evidence supports that finding. Next, plaintiff mentions several times that the witness was a "paid performer," or words to that effect. Mr. Feuchter admitted that he was being paid to make the

examination, and compensation to expert witnesses is a common and acceptable practice. Next, it is asserted that Mr. Feuchter "did not even go to the scene, nor did he seek to learn how the car got on the junk yard," he "never saw the collision," and he "testified about lack of debris." As to this latter statement the comment is added, "great day, he never even had the decency to go to the scene of the accident." The reference by the witness to the lack of debris did not pertain to the place where the collision occurred, but to the "fact that there was a lack of debris" in the trunk of the Johnson automobile "from the results of combustion." These contentions all are totally without merit. Lastly, plaintiff says the opinion was based on hearsay. When Mr. Feuchter was asked to express an opinion he did so upon the basis of his examination of the Johnson automobile. On cross-examination he was asked if he had been "more or less informed of how the accident happened," and he replied as follows: "To the best of my recollection, I was permitted to see a report of the police who investigated the accident, and it may be quite possible, I am not sure, that statements of certain witnesses or others were read to me or told to me." He was not asked if the opinions he expressed were in any way based on this information, and there is nothing in the record to indicate that they were. We find no merit to any of these contentions.

 As to the contention concerning the punitive count. Plaintiff offered the testimony of Robert Lee Jackson that about one and one-half miles from the scene of the accident a Chevrolet station wagon with one man in it passed him going 70 to 75 miles an hour, and that he later saw this same automobile at the scene of the collision. The inference is that this was the Miller automobile. Upon objection this offered testimony was ordered stricken by the trial court, and properly so. See Sisk v. Industrial Track Construction Company, 316 Mo. 1143, 295 S.W. 751; Wood v. Claussen, Mo.App., 207 S.W.2d 802. Both

Miller and Mrs. Gregory were named as defendants in Count II in which plaintiff sought punitive damages. No evidence whatever justified any action of any nature against Mrs. Gregory. Plaintiff says that there was evidence that Miller had an odor of alcohol on his breath and that this and the rejected evidence of speed authorized an action for punitive damages. He cites no authority whatever for such right of action, under the facts he has outlined, pursuant to either the statutory or common law of Illinois. The burden was on him to establish that the trial court erred in directing a verdict as to Count II, and he has not done so.

In our review of this case we have gone further than the applicable rules provide or authorize; a procedure not to be taken as a precedent. We find no prejudicial error, and for that reason the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.